**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles BROWN, Defendant–Appellant.**

No. 90–3398.

United States Court of Appeals, Seventh Circuit.

Submitted April 23, 1991.*

Decided June 13, 1991.

---

* The parties, by joint agreement, waived oral argument of this case.

Melanie Conour, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

R. Mark Inman, Alden & Clem, Indianapolis, Ind., for defendant-appellant.

Before CUMMINGS, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Charles Brown brings this direct criminal appeal challenging his conviction for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mr. Brown also was charged with three counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was acquitted of the three possession charges. Mr. Brown argues that his conviction must be overturned because the inconsistent verdicts, while not in and of themselves sufficient to warrant reversal, establish that the prosecution offered insufficient evidence to convict him of the alleged conspiracy. For the following reasons, we affirm the judgment of the district court.

# I

## BACKGROUND

Charles Brown was indicted, along with Dino Velcich, for conspiracy to possess and distribute cocaine. The indictment contained seven counts. Count One was a conspiracy charge, naming both Mr. Brown and Velcich; Counts Two and Three were possession with intent to distribute charges naming only Mr. Brown; Count Four was a possession with intent to distribute charge naming both Mr. Brown and Velcich; Counts Five through Seven were possession with intent to distribute charges naming only Velcich.

At his two-day jury trial, Mr. Brown did not present witnesses or introduce evidence. The government presented seven witnesses, including Velcich and Dennis "Rick" Henry, an unindicted member of the conspiracy. Henry, by his own admission, was the link between Mr. Brown and Velcich and transported the cocaine between the two men. The government established that Henry and Mr. Brown were acquainted with each other through Ronald Sheppard. Henry rented office space for a commodities business in a building owned by Sheppard. Mr. Brown was a janitor in the same building.

Henry testified that he had several conversations with Mr. Brown regarding more lucrative occupations and that Mr. Brown suggested that he deal drugs. According to Henry, these conversations became more specific over time, and potential cocaine buyers and prices were discussed. Henry testified that, in March 1986, he travelled to Chicago and purchased two ounces of cocaine from Velcich. Henry then returned to Indianapolis and gave the cocaine, in a series of incremental deliveries, to Mr. Brown, who in turn sold it to others. Henry testified that, after the initial trip to Chicago, he returned to Chicago every two to five weeks and purchased more cocaine. Upon his return from each trip, Henry would divide up the cocaine and deliver it, again in increments, to Mr. Brown, who would in turn sell it to others. Henry stated that Mr. Brown was the sole individual to whom he gave the cocaine. Henry further testified that all his purchases took place between March 1986 and April 1987 and that the quantity ranged from two to seven ounces of cocaine at a time.

In April 1987, Henry was arrested at the Indianapolis airport upon his return from Chicago. Seven ounces of cocaine were seized from his jacket pocket at the time of his arrest. After his arrest, Henry agreed to cooperate with law enforcement officials. He identified Velcich as his source of cocaine and Mr. Brown as the individual who sold the cocaine in Indianapolis. Henry attempted to make another purchase from Velcich in Chicago, although the transaction was never completed.

Another government witness, James Robinson, testified that he purchased cocaine from Mr. Brown on at least eight occasions between March and December 1986. Robinson stated that he obtained anywhere from half an ounce to two ounces per purchase from Mr. Brown and that he in turn sold it in smaller quantities to others. Mr. Brown informed him that the cocaine had come from Henry. During a search of Robinson's home, police seized a quantity of cocaine and several scales used to measure and weigh cocaine. Robinson also gave the officials information regarding Henry's travel plans that enabled drug enforcement agents and police to intercept Henry at the airport in possession of cocaine.

Finally, Velcich testified and confirmed that he sold cocaine to Henry on a regular basis at intervals of two to five weeks for approximately one year. Velcich also testified that Henry had indicated that he sold the cocaine to a black man named Charles for further distribution in Indianapolis. In addition, Velcich testified that, on one occasion when he called Henry in Indianapolis, a man, who sounded like a black man, answered Henry's telephone and identified himself as Charles.

# II

## ANALYSIS

██ Mr. Brown claims that the inconsistent verdicts establish the insufficiency of

the government's evidence that he was involved in a conspiracy to possess with intent to distribute cocaine. The applicable standard of review for sufficiency of evidence challenges requires that we analyze the evidence in a light most favorable to the government to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See, e.g., United States v. Lamon,* 930 F.2d 1183, 1190 (7th Cir.1991); *United States v. Romo,* 914 F.2d 889, 899–900 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); *United States v. Abayomi,* 820 F.2d 902, 905 (7th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). In conspiracy cases, we determine if there is substantial evidence to support the conspiracy conviction. *See United States v. Allen,* 930 F.2d 1270, 1274 (7th Cir.1991); *United States v. Durrive,* 902 F.2d 1221, 1228 (7th Cir.1990).

■ The applicable legal principles are well settled. A conspiracy consists of the combination or confederation of two or more individuals for the purpose of joining efforts to commit a crime. *See, e.g., Durrive,* 902 F.2d at 1225. Although a member of a conspiracy need not know all the members of a conspiracy, the government must prove that more than mere association with the members of the conspiracy existed and must present evidence supporting the inference that the accused knowingly joined and participated in the conspiracy. *See United States v. Paiz,* 905 F.2d 1014, 1020 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). Therefore, to be guilty of participation in a conspiracy, a defendant must know of an agreement to commit a crime and must intend to join it. *See United States v. Auerbach,* 913 F.2d 407, 414–15 (7th Cir.1990). A conspiracy by its very nature involves clandestine plans to commit a crime; the heart of a conspiracy is an agreement. Consequently, circumstantial evidence may be used to prove the conspiracy's existence. *See, e.g., Lamon,* 930 F.2d at 1190; *United States v. Townsend,* 924 F.2d 1385, 1390 (7th Cir.1991); *United States v. Kimmons,* 917 F.2d 1011, 1017

(7th Cir.1990). Finally, a conspiracy indictment under 21 U.S.C. § 846 need not allege any specific overt acts in furtherance of a conspiracy, but must allege a conspiracy to distribute drugs and must specify, at a minimum, the time during which the conspiracy is alleged to have existed and the statute alleged to have been violated. *See United States v. Dempsey,* 806 F.2d 766, 769 (7th Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987).

Mr. Brown does not directly challenge the existence of a conspiracy. Rather, he argues that his acquittal on three possession with intent to distribute counts leads to the conclusion that there was insufficient evidence to support his conspiracy conviction. However, both the Supreme Court and this circuit, in discussing the appropriate evaluation of inconsistent verdicts, have rejected Mr. Brown's position. In *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Supreme Court stated that each count in an indictment is to be treated as a separate indictment and that an acquittal on one count does not dictate an acquittal on any other count. *Id.* at 62–63, 105 S.Ct. at 475–76 (citing *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)). The Court reasoned that, when a jury returns inconsistent verdicts, it may do so for reasons other than a determination of innocence, such as mistake, compromise, or lenity. *Id.* 469 U.S. at 65, 105 S.Ct. at 476. The Court also noted that the government must bear the consequences of the jury's judgment because it cannot appeal an acquittal rendered by a jury. *Id.* at 66, 105 S.Ct. at 477. Thus, the Court concluded that a defendant should not be afforded the further benefit of a presumption that inconsistent verdicts indicate a jury's determination that the defendant is innocent. *Id.* at 69, 105 S.Ct. at 479.

This circuit, both before and after *Powell,* has concluded that defendants facing inconsistent verdicts should not benefit from the inconsistency by a nullification, as a matter of law, of the guilty verdicts. *See United States v. Torres,* 809 F.2d 429, 432

(7th Cir.1987); *United States v. Isaksson,* 744 F.2d 574, 579 (7th Cir.1984). The First Circuit previously recognized a "narrow exception" to this proposition: "[A] jury's acquittal on substantive counts operates as an acquittal on the underlying conspiracy count where the acquittal on the substantive counts constitutes a determination that no overt act in support of the conspiracy took place." *United States v. Morales,* 677 F.2d 1, 3 (1st Cir.1982). That court now has corrected its course. *See United States v. Bucuvalas,* 909 F.2d 593, 594 (1st Cir.1990).[1]

■ In this case, the jury heard testimony of a constant series of exchanges of money and cocaine. The transactions continued for over a year at intervals of every two to five weeks. Further, the government presented evidence of both Mr. Brown's source of cocaine and, through Robinson's testimony, of Mr. Brown's own distribution of the cocaine he received from that source. The jury also heard evidence of his planning and calculations with Henry and of the increasing quantity of the cocaine purchased and distributed, beginning with two ounces per visit to Chicago and increasing to seven ounces per visit. Based on all of this evidence, the jury could have concluded that Mr. Brown entered into a conspiracy to obtain and distribute cocaine with Henry and Velcich. Although there was no direct evidence that Mr. Brown possessed cocaine, nor evidence other than the testimony of his alleged coconspirators that linked Mr. Brown to any drug distribution, the testimony of the acts taken by Henry and Velcich to buy and sell cocaine, and of Henry's conversations with Mr. Brown, constitutes sufficient circumstantial evidence that a conspiracy existed. Therefore, the jury rationally could conclude that Mr. Brown knowingly participated in the conspiracy as charged.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

1. We had criticized the holding in *Morales* in our decision in *United States v. Paiz,* 905 F.2d 1014, 1021 n. 6 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *see also United States v. Isaksson,* 744 F.2d 574, 580 (7th Cir.1984) ("the narrow exception to the inconsistent verdict rule prescribed by *Morales,* even if it were to be accepted by this Court, is inapposite"). In any event, the rule in *Morales* would not, by its own terms, assist Mr. Brown. The government presented evidence of, and included in the Count One indictment allegations of, acts by Mr. Brown other than those alleged in the three independent possession counts that supported the government's theory of the existence of a conspiracy and Mr. Brown's knowing participation in that conspiracy. Furthermore, as we already have noted, an overt act is an unnecessary element in a drug conspiracy charge.