977 F.2d 575
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin WILLIAMS, Defendant-Appellant.
 No. 91-5861.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1992.
Decided Sept. 28, 1992.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling, No. CR-91-16; Frederick P. Stamp, Jr., District Judge.
 Argued: Michael S. Liberman, Dimuro, Ginsberg & Lieberman, P.C., Alexandria, Va., for appellant; Thomas Oliver Mucklow, Asst. U.S. Atty., Wheeling, W.Va., for appellee.
 On Brief: William A. Kolibash, U.S. Atty., Wheeling, W.Va., for appellee.
 N.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL and LUTTIG, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Alvin Williams was convicted of conspiracy to distribute and distribution of cocaine. Williams primarily argues that the jury verdict should be reversed for insufficient evidence of conspiracy. Finding sufficient evidence and no further error, we affirm his conviction.
 
 I.
 
 2
 The Government investigated Williams based on information provided by William Lucian (Jackie) Johnson about cocaine operations in the Weirton, West Virginia area. When he first approached the police, Johnson was a former police chief who had become a user and a dealer; he was not, however, a government agent. At trial, Johnson testified that, on multiple occasions, he had purchased "eight balls," weighing one-eighth ounce each, from Williams for sale to others as well as for personal use. Joint Appendix at 261-272. Seven other witnesses also testified that they had purchased cocaine from Williams. At least two of these witnesses were "street runners" who bought cocaine for others and were paid either in cash or product. The largest quantity sold by Williams to any of the witnesses was one-eighth ounce.
 
 
 3
 However, the evidence showed that Williams possessed 3 1/2 ounces in April or May of 1988. Eli Turner testified that Williams told him that he had hidden two ounces of cocaine in a thermos in the basement of Turner's cousin's home. That same day, Williams came to Turner's apartment and left another thermos in Turner's refrigerator in a surreptitious manner. Turner later discovered and opened the thermos. It was filled with a sandwich-type bag and white powder. After trying to contact Williams at work, Turner flushed the white powder down the toilet. The total weight of cocaine in the two thermoses was estimated at 3 1/2 ounces.
 
 
 4
 In addition, the evidence showed that Williams possessed 4 ounces in July of 1987. James Acconcia testified that he had known Williams many years and that he began purchasing cocaine from Williams in July of 1987, "at least a couple and maybe three times a week," mostly for personal use. He testified that he went to Williams apartment to buy cocaine and Williams took a ball of cocaine about 4 inches in diameter out of his cabinet and cut an eighth of an ounce for Acconcia. The ball was estimated to contain 4 ounces of cocaine.
 
 
 5
 Williams denied that he had ever possessed or sold cocaine. The jury found him guilty of all twelve counts of the indictment.
 
 II.
 
 6
 Williams challenges four aspects of the proof concerning conspiracy adduced at trial. He maintains there was insufficient proof of conspiracy, that statements admitted as co-conspirator statements were hearsay, that the indictment did not give him adequate notice of the conspiracy and that the total drug weight was overstated based on unreliable testimony from co-conspirators.
 
 A.
 
 7
 Williams' basic contention is that the evidence did little more than establish that he sold cocaine to others who in turn used the drug themselves or shared it with associates. Sufficiency of the evidence is a jury question and appellant bears a very heavy burden in this challenge. The evidence is viewed in the light most favorable to the government, and if any rational trier of fact could have found the essential elements beyond a reasonable doubt, the conviction must be sustained. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982) (noting that where there are conflicts in the testimony, it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses).
 
 
 8
 The elements of conspiracy that the government must prove beyond a reasonable doubt are that 1) there was an agreement between two persons (not including government agents); 2) to commit in concert an unlawful act. Morrison v. California, 291 U.S. 82, 92 (1934). "[T]he gist or gravamen of the crime of conspiracy is an agreement to effectuate a criminal act." United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.1980) (citations omitted). "These elements can be shown by circumstantial evidence such as [defendant's] relationship with other members of the conspiracy, the length of the association, his attitude, conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984).
 
 
 9
 However, if the purposes of the alleged co-conspirators are different there is no conspiracy. United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). "A conspiracy is not shown until the government has presented evidence of a specific agreement to commit a specific crime, for the same criminal purpose, on the part of all indicted conspirators." United States v. Bell, 954 F.2d 232, 237-38 (4th Cir.1992). Williams was the only person indicted in connection with this conspiracy, however, the evidence showed that each of the witnesses and street runners identified as his co-conspirators agreed, either directly or indirectly, to assist him in distributing cocaine. They had only one purpose--to sell cocaine.
 
 
 10
 Other courts have found that a large quantity of cocaine supports an inference that a conspirator knew he was part of a venture which extended beyond his individual participation and that the suppliers and customers knew of the vertical nature of the conspiracy. United States v. Brown, 856 F.2d 710, 712 (4th Cir.1988) (citations omitted). In United States v. Prieskorn, 658 F.2d 631, 634 n. 1 (8th Cir.1981), the "large quantity of cocaine" was a purchase of 8 to 16 ounces. In this case, there was no evidence of the total weight of quantities purchased by Williams from his unknown supplier. There was evidence that at one point he possessed 3 1/2 ounces and at another he possessed 4 ounces. Williams sold amounts large enough for resale, but small enough to be affordable by his usual customers. In other words, Williams was a middleman in a small town. The quantities attributed to him are large enough to support the above inference of vertical conspiracy.
 
 
 11
 In addition, Williams and his customers had agreed upon locations where he offered cocaine for sale as well as methods to attract both customers and his usual runners. Williams went to certain bars and stores which served as courtship locations for drug buyers and sellers. Purchasers recognized Williams' car. Even though runners who regularly bought from Williams also bought from other dealers, they actively conspired with Williams by spreading the word that Williams was selling as well as by buying from Williams themselves. Thus, there is ample evidence of the runners' participation in a conspiracy to distribute cocaine with Williams. And, perhaps most importantly, we are persuaded by the strong evidence of Williams' repeated sales of resale quantities to Johnson that Williams knowingly participated in a criminal conspiracy to distribute cocaine.
 
 B.
 
 12
 As a corollary to his main argument, Williams contends that it was error for Judge Stamp to admit out of court statements from alleged co-conspirators pursuant to Fed.R.Evid. 801(d)(2)(E).* Before admitting evidence as a co-conspirator's statement, the trial court must first conclude: (1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought; and (2) that the statements at issue were made in furtherance and in the course of that conspiracy. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir.1992), citing Bourjaily v. United States, 483 U.S. 171, 175 (1987). These threshold requirements must be established by a preponderance of the evidence. Bourjaily, 483 U.S. at 175. "Any findings of fact with respect to these questions are subject to a clearly erroneous standard of review, and a district court's decision to admit evidence under Rule 801(d)(2)(E) may only be overturned on appeal if it constituted an abuse of discretion." Blevins, 960 F.2d at 1255 (citations omitted).
 
 
 13
 Williams asserts that not only was there insufficient evidence of a conspiracy between Williams and the declarants but that the declarants were at most mere buyers and not co-conspirators. Having found that Williams was engaged in a conspiracy, we must address whether these specific declarants were also part of that conspiracy. The testimony showed that each of the declarants was a street runner who purchased cocaine from Williams and brought it back to his or her buyer. Thus, it was entirely reasonable for Judge Stamp to conclude that these street runners were included within Williams' conspiracy to distribute cocaine and that their statements were made in furtherance of that conspiracy. Thus, this court finds that the district court did not abuse its discretion in admitting these statements under Rule 801(d)(2)(E).
 
 C.
 
 14
 Nevertheless, Williams argues that the conspiracy count of the indictment was inadequate under the Fifth and Sixth Amendments because, "No ways, manner and means are included. No overt acts are included. No list of co-conspirators are listed, although some were clearly known to the grand jury. The charge here did not put Williams on notice of what he was actually charged with having done." Appellant's Brief at 21-22.
 
 
 15
 When reviewing the sufficiency of the indictment, the court reviews the entire indictment and determines de novo:
 
 
 16
 (1) whether the indictment contains the elements of the offense intended to be charged and sufficiently appraises the defendant of [the crime] he should be prepared to meet;
 
 
 17
 (2) whether the indictment is specific enough to make a plea of double jeopardy possible.
 
 
 18
 See United States v. Werme, 939 F.2d 108, 112 (3rd Cir.1991) (citation omitted). See also United States v. Lang, 766 F.Supp. 389, 395 (D.Md.1991), citing Hamling v. United States, 418 U.S. 87, 117 (1974); Russell v. United States, 369 U.S. 749, 763-64 (1962); United States v. Hooker, 841 F.2d 1225, 1227 (4th Cir.1988); United States v. Cobb, 905 F.2d 784, 799 (4th Cir.1990). "A conspiracy indictment under 21 U.S.C. Section 846 need not allege any specific overt acts in furtherance of a conspiracy, but must specify, at a minimum, the time during which the conspiracy is alleged to have existed and the statute alleged to have been violated." United States v. Brown, 934 F.2d 886, 889 (7th Cir.1991). See also United States v. Dempsey, 806 F.2d 766, 769 (7th Cir.1986); Accord United States v. Macklin, 927 F.2d 1272, 1277 (2nd Cir.1991).
 
 
 19
 The indictment in this case is sufficient to withstand an attack on Fifth and Sixth amendment grounds. It specifically charged Williams with conspiracy under 21 U.S.C. Section 846 and it identified the timeframe as between January of 1987 and January of 1989.
 
 
 20
 In support of his contention that the conspiracy indictment must identify all known co-conspirators, Williams relies heavily on United States v. Soldano, 626 F.Supp. 384 (S.D.Fla.1986).
 
 
 21
 However, Soldano is distinguishable from the present case in that Soldano involved an "open ended" indictment which stated that the conspiracy existed "from an unknown date until on or about late April, 1983." The court noted that the open ended nature of the indictment, coupled with lack of indentification of any co-conspirator, presented constitutional problems. In contrast, the time frame of the alleged conspiracy in this case was explicitly identified in the indictment. Although the indictment does not name co-conspirators, there is simply no requirement that the government identify all or any of the members of a conspiracy. We find the indictment constitutionally sufficient.
 
 D.
 
 22
 Lastly, Williams argues that the trial court erred in finding that the conspiracy involved 519 grams of cocaine. Williams would have been sentenced under a lower offense level if the drug weight was determined to be under 500 grams. The district court's findings should be upheld unless they are clearly erroneous. See United States v. Daughtery, 874 F.2d 213, 219 (4th Cir.1989).
 
 
 23
 The probation officer determined that 689.68 grams should be used for sentencing. The presentence report took the position that even if the court did not consider the 4 ounces observed by Acconcia and two of the 3 1/2 ounces testified to by Turner, the amount would still come to 519.58 grams. Judge Stamp relied on this calculation after hearing all of the evidence and considering Williams' objections to the presentence report.
 
 
 24
 At the sentencing hearing, Williams put on two relatively minor purchasers who had trouble remembering the exact number of times they had purchased from Williams. Williams asserts that this puts the weight attributable to them in doubt and that he should be sentenced below 500 grams.
 
 
 25
 However, particularly when two of the largest amounts were not included, and in light of the careful consideration given the determination of the weight attributed to Williams, this court finds that Judge Stamp's acceptance of the amount in the presentence report was not clearly erroneous.
 
 III.
 
 26
 This litany of allegations does nothing to shake our confidence that the jury was correct in its finding of guilt in this case. For the reasons stated above, appellant's conviction is
 
 
 27
 AFFIRMED.
 
 
 
 *
 Rule 801(d)(2)(E) provides that a statement by a co-conspirator during the course and in furtherance of the conspiracy is not hearsay