**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerome CAMPBELL, Defendant–
Appellant.**

**No. 39–2121.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1992.

Decided Feb. 8, 1993.

Stephen J. Liccione, Asst. U.S. Atty., Milwaukee, WI (argued), for U.S.

Jerry B. Kurz (argued), Kathryn Hall, Hall & Kurz, Chicago, IL, for Jerome Campbell.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Jerome Campbell was indicted on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and three counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). A jury acquitted Campbell on the three possession counts and convicted him on the conspiracy count. Pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the district court sentenced Campbell to 220 months imprisonment. The defendant appeals his conviction and sentence. We affirm.

## I. BACKGROUND

Robert Gant was indicted along with Campbell on all four counts. Gant pled guilty to the conspiracy count. He cooperated with Government prosecutors by testifying against his coconspirator Campbell and, in exchange, the three possession counts against him were dropped. Both Gant and Campbell lived in Milwaukee, Wisconsin. According to Gant's testimony, Campbell approached Gant in December, 1987, and stated that he, Campbell, was in the cocaine trafficking business, and asked if Gant would be interested in joining with him as one of his dealers. Gant accepted the offer. Campbell began supplying Gant with cocaine, which Gant would sell on the streets, returning a portion of the proceeds to Campbell. Gant testified that in January, 1988, Campbell supplied him with four ounces of cocaine which Gant sold for $3,600. He turned over a portion of the proceeds to pay Campbell. In February, 1988, Campbell supplied Gant with one-half kilogram of cocaine. Gant again sold the cocaine, and returned a portion of the proceeds to Campbell. In March, 1988, Gant went to Campbell's house to pick up a kilogram of cocaine. While at Campbell's residence, Gant testified that he spotted three other kilograms of cocaine. Gant sold the kilogram Campbell gave him, and paid Campbell $32,000 from the proceeds. In May, 1988, Campbell supplied Gant with another kilogram of cocaine to sell. Gant eventually paid Campbell $32,000 for this kilogram.

In June, 1988, undercover special agents of the Drug Enforcement Administration ("DEA"), began purchasing cocaine from Gant in Milwaukee. In July, during a drug purchase, the agents told Gant that they were interested in buying cocaine in amounts of one kilogram or greater. DEA agent Jeanne Tasch testified that Gant replied that he had a partner and had to check with him in order to supply such large amounts. On July 27, 1988, Tasch and another agent, Ann Judith Lambert,

met Gant at the Ground Round restaurant in Glendale, Wisconsin, just outside the Milwaukee City limits. The agents told Gant that they had plenty of money and were prepared to purchase two kilograms of cocaine. Gant said he would have to check with his partner, and left to make a telephone call. After two calls, he told the agents that he had reached his partner, and he would be arriving soon. Campbell arrived in a Cadillac about ten minutes later, and sat at the table with Gant and the undercover agents. Gant told Campbell that the agents were interested in purchasing two kilograms of cocaine. Campbell said that would be no problem. Agent Tasch testified that Campbell dominated the ensuing conversation, telling the agents that he had a cocaine source in Los Angeles, California who could supply him with hundreds of kilograms of cocaine. Campbell said the price for the first kilogram would be $25,000 but that he would cut the price in subsequent purchases, and that he was prepared to offer volume discounts. He told the agents that he had come to the Ground Round personally because he would not supply Gant with kilogram-size amounts of cocaine without first ensuring that the buyer was not an undercover police officer. Campbell told the agents that, for the first sale, the exchange of the money and the drugs would occur at a motel where they could examine the cocaine in one room while Campbell's representatives would confirm that the agents had left sufficient money in another room. Campbell told the agents that in the future they would be dealing exclusively with Gant and would never see him again.

The planned two-kilogram sale never occurred because Campbell discovered the identity of the agents. On August 3, 1988, the agents arrested Gant. Shortly thereafter, the agents arrived at Campbell's Milwaukee address. A woman who identified herself as Michelle Wilder answered the agent's knock and told them that Romeo (this was Campbell's nickname) knew they were the police and that he was not in the home. Campbell surrendered to the DEA agents in September, 1988 after negotiating with them from hiding for over a

month. Gant testified that after their arrests Campbell directed him to tell law enforcement officials that the Ground Round meeting was not about drugs, but about arranging a "date" with one of the agents. Gant also testified that Campbell threatened him while the two were in a holding area during the trial in an attempt to influence his testimony.

## II. CAMPBELL'S CONVICTION

■ Campbell argues that the Government presented insufficient evidence to support his conviction for conspiring with Gant to distribute cocaine. Campbell maintains that his acquittal on the three possession counts demonstrates that the jury believed that Gant was less than truthful. Consequently, he insists that the jury should not have believed Gant's testimony about the drug conspiracy he and Campbell planned at the Ground Round restaurant. Campbell admits attending the meeting at the Ground Round with the two DEA agents, but denies that it had anything to do with cocaine trafficking.

A defendant urging that his conviction be overturned because it was supported by insufficient evidence carries a heavy burden. *United States v. Burrell,* 963 F.2d 976, 987 (7th Cir.), *cert. denied sub nom. Henry v. United States,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). We review the evidence in the light most favorable to the Government, and if we determine that a rational jury could have found the defendant guilty, we will affirm the conviction. *Id.* at 987. In conducting this review, "[w]e will not reweigh the evidence or judge the credibility of witnesses." *United States v. Van Wyhe,* 965 F.2d 528, 531 (7th Cir.1992). That is the role of the jury, not an appellate court.

■ The elements of the offense for which Campbell was convicted are clearly established. A conspiracy is a confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act. *United States v. Jackson,* 974 F.2d 57, 59 (7th Cir.1992). To prove that a defendant was a member of

the conspiracy, the Government must demonstrate a participatory link between the conspiracy and the defendant. *United States v. Navarez*, 954 F.2d 1375, 1380–81 (7th Cir.1992). To establish that participatory link, the Government must offer sufficient evidence to demonstrate that the defendant knew of the conspiracy and that he intended to join and associate himself with its criminal design and purpose. *Id.* at 1381 (citation omitted). When reviewing conspiracy convictions, we must be certain that the Government presented substantial evidence that the defendant was a conspirator. *Burrell*, 963 F.2d at 987. The evidence need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt. *Van Wyhe*, 965 F.2d at 532.

Campbell's conspiracy conviction was supported by more than ample evidence. DEA special agents Tasch and Lambert testified that they met with Gant and Campbell at the Ground Round restaurant to discuss the purchase of two kilograms of cocaine. At that meeting, Campbell, according to the agents, stated unequivocally that he was a cocaine dealer who trafficked in large amounts of the illegal drug. He assured the agents that he could deliver the two kilograms desired, and promised that he could supply them with larger amounts in subsequent deals. Campbell explained to the agents he had a drug supply source in Los Angeles, California who could provide hundreds of kilos of cocaine. Campbell described in detail how the drug purchase would occur at a hotel, and made clear that he would engineer his end of the bargain through Gant, whom he treated as an employee in the drug ring he headed. Gant's testimony corroborated the account given by the two DEA agents. Set against this testimonial evidence is Campbell's bald assertion that the discussion at the Ground Round had nothing to do with drugs. The jury was free to believe Campbell's denials, but it did not. Instead, the jurors chose to believe the testimony given by Gant and the two DEA agents. On appeal, we refuse to second-guess the jury's credibility determinations. Camp-

bell's conviction on the conspiracy count was supported by more than sufficient evidence.

Despite the damning testimony of the DEA agents, Campbell argues that his acquittal on the three possession counts somehow bound the jury to acquit him on the conspiracy count as well. Campbell apparently believes that the three acquittals are conclusive evidence that the jury did not find any of Gant's testimony credible and therefore should not have accepted his testimony about the Ground Round meeting. Initially we note, as set forth above, that in making its case on the conspiracy count, the Government offered not only Gant's testimony, but also the testimony of the two DEA agents who met with Gant and Campbell at the Ground Round. Therefore, even accepting Campbell's mistaken premise that the acquittal on the possession counts meant that the jury could not believe anything Gant had to say about the conspiracy, we would still uphold Campbell's conviction based on the testimony of the DEA agents.

More fundamentally, Campbell is without legal support when he argues that the acquittal on the three possession counts leads to the conclusion that there was insufficient evidence to support his conspiracy conviction. In *United States v. Brown*, 934 F.2d 886, 887 (7th Cir.1991), we upheld the conviction of a defendant who, like Campbell, was found guilty on a drug conspiracy count but was acquitted on three possession counts. The defendant in *Brown* had argued that the inconsistency in the verdicts established that the prosecution offered insufficient evidence to convict him of the conspiracy. *Id.* In accordance with the Supreme Court's decision in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), we held that each count in an indictment is to be treated as a separate indictment and an acquittal on one count does not dictate an acquittal on any other count. *Brown*, 934 F.2d at 889. When a jury returns inconsistent verdicts, we explained, it may do so for reasons other than a determination of innocence, such as mistake, compromise, or len-

ity. *Id.* See also *United States v. Abayomi,* 820 F.2d 902, 907 (7th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). Our role on appeal is limited to reviewing the *conspiracy conviction,* independent of the jury's finding of not guilty on the possession counts, to ensure that conviction is supported by sufficient evidence. *United States v. Grier,* 866 F.2d 908, 928 (7th Cir.1989). As we held above, it is.

### III. CAMPBELL'S SENTENCE

Campbell · challenges on three grounds the sentence the district court imposed on him pursuant to the Guidelines.

### A.

■ First, the defendant argues that the district court incorrectly found that Campbell was responsible for conspiring to distribute slightly more than five kilograms of cocaine. Under U.S.S.G. § 2D1.1(a)(3), this amount of cocaine corresponded to a base offense level of 32. Campbell maintains that he should be held responsible for conspiring to distribute only the two kilograms of cocaine he discussed with the agents at the Ground Round restaurant, and thus his base offense level should have been set at 28. Campbell claims he should not be held responsible for the cocaine Gant alleged that Campbell possessed and distributed before July, 1988, because the jury acquitted him of the three possession counts growing out of those allegations.

■ The amount of drugs involved in a conspiracy is a factual determination by the sentencing court which we review for clear error only. *United States v. Cochran,* 955 F.2d 1116, 1124 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992). "Those convicted of conspiring to violate the drug laws are criminally responsible for the total quantity of drugs in which the conspiracy they joined can reasonably be estimated to have dealt." *United States v. Morrison,* 946 F.2d 484, 501 (7th Cir.1991). In determining the amount of drugs involved in a conspiracy for sentencing purposes, the district court may consider all relevant conduct that was· part of the charged offense, including conduct for which the defendant was charged and acquitted. *United States v. Banks,* 964 F.2d 687, 692 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992). Nothing in the Guidelines "prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct." *Morrison,* 946 F.2d at 501 (citation omitted). "[A] jury reaches its verdict of guilt or innocence utilizing the beyond a reasonable doubt standard, while the Guidelines' standard for resolving disputes is a less stringent quantum of proof, namely a preponderance of the evidence standard." *United States v. Welch,* 945 F.2d 1378, 1385 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992). "A verdict of 'not guilty' does not mean that the defendant didn't do it; it means the prosecution failed to establish culpability beyond a reasonable doubt." *Id.* (quoting *United States v. Fonner,* 920 F.2d 1330, 1332 (7th Cir.1990)). The Government was thus required to prove by a preponderance of the evidence that Campbell was a participant in a drug conspiracy involving over five kilograms of cocaine. *Banks,* 964 F.2d at 692.

The district court found that the drug conspiracy in this case involved over 5 kilograms of cocaine largely because it found Gant's testimony about the conspiracy credible. In an argument similar to the one he made in challenging his conspiracy conviction, Campbell maintains that the jury's acquittal on the possession counts meant that it did not find Gant credible and that therefore the district court could not rely on Gant's testimony in computing the amount of drugs involved in the conspiracy. The argument is a loser. As we have already noted, Campbell's acquittal on the possession counts does not preclude a finding by the district court that he was responsible for the charged conduct. The district court chose to believe Gant's testimony about Campbell's possession and distribution of cocaine, and chose not to believe Campbell's denials. We defer to the

sentencing court's credibility determinations unless they are without support in the record. *United States v. Beal*, 960 F.2d 629, 634 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992). Campbell's own statements to the DEA agents at the Ground Round lend powerful support to Gant's description of Campbell as the leader of a sophisticated operation trafficking in large quantities of cocaine. Based on our review of the record, we are convinced that the district court's computation of the amount of cocaine involved in this conspiracy was not clear error.

### B.

 Campbell also challenges the district court's two-level enhancement of his base offense level pursuant to U.S.S.G. § 3C1.1. Under § 3C1.1, "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." The commentary to § 3C1.1 provides several examples of conduct which may provide a basis for an obstruction of justice enhancement, including "testifying untruthfully or suborning untruthful testimony concerning a material fact" and "threatening, intimidating, or otherwise unlawfully attempting to influence a ... witness." U.S.S.G. § 3C1.1, comment. (n. 1(c)(d)). As we noted above, Gant testified that Campbell threatened him while the two were in a holding area during trial in an attempt to influence his testimony about the Ground Round meeting. Campbell trots out his familiar argument that the district court erred in relying on Gant's testimony in finding that Campbell attempted to obstruct justice. We review this finding of fact for clear error only. *United States v. Osborne*, 931 F.2d 1139, 1153 (7th Cir.1991). Credibility judgments of witnesses are left to the sound discretion of the district court, which has the advantage of having observed the demeanor of the witnesses as they testified. *Id.* Once again, the district court believed Gant's account of the threats and refused to accept Campbell's denials. We refuse to second-guess that judgment because the trial judge, with an opportunity to view and weigh the witnesses' testimony, is in the best position to make such determinations.

### C.

 Finally, the defendant challenges the district court's decision to impose a 220–month sentence on the defendant, near the high end of the applicable Guidelines range of 188–235 months. Campbell maintains that the district court chose 220 months because, as the district court itself stated, it was "convinced" that Campbell was "a big drug dealer." Campbell argues that the district court could only have reached this conclusion by relying on the grand jury testimony of Michelle Wilder, Campbell's live-in girlfriend. Wilder testified before the grand jury that Campbell operated a large cocaine ring out of his home, employing numerous couriers and extending to contacts in Los Angeles, California. Wilder testified that the drug operation netted Campbell about $5,000 per day. Wilder was unavailable to testify at trial, and the Government sought to introduce her grand jury testimony under Fed. R.Evid. 804(b)(5). That provision states that the district court may admit a hearsay statement not covered by any of the specific hearsay exceptions contained in Rule 804 if the statement has "circumstantial guarantees of trustworthiness" equivalent to those required by the express hearsay exceptions, and if the statement is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." Fed.R.Evid. 804(b)(5). The district court ruled the grand jury statement inadmissible, finding that it was not "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts" and that it was not certain that the prosecutors had not pressured Wilder into making the statement. Nevertheless, at sentencing the court stated that it considered Wilder's grand jury testimony credible for sentencing purposes as evidence of the scope of Campbell's cocaine operation.

Campbell argues that it was error for the district court to consider the grand jury testimony in sentencing.

 "[A] sentencing judge is free to consider a wide variety of information that would be inadmissible at trial, including hearsay." *Beal*, 960 F.2d at 634. "The district court is empowered to consider this broad range of information so that it may impose the sentence most appropriate to the defendant's circumstances." *Id.* A defendant, however, has a due process right to be sentenced on the basis of reliable information, *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991), and the more lax evidentiary standards at sentencing are in some tension with that right. *Beal*, 960 F.2d at 634. We have resolved that tension by insisting that a defendant have a reasonable opportunity to rebut contested hearsay and that contested hearsay be reliable. *Id.* "To succeed on a challenge to a sentence, a defendant must show that information before the court was inaccurate, and that the court relied on it." *Musa*, 946 F.2d at 1306. We give great deference to the district court's determination that the hearsay is worthy of credence, and will review that ruling only for an abuse of discretion. *Beal*, 960 F.2d at 634.

Wilder's grand jury testimony that Campbell was a major drug dealer was corroborated by the testimony of the DEA agents concerning Campbell's own incriminating statements, made at the Ground Round meeting, about the magnitude and scope of his drug operation. At that meeting, Campbell volunteered that he could deliver large quantities of cocaine to the agents, and explained that he usually maintained a low profile and allowed surrogates like Gant to execute his transactions for him. This information, combined with all the other record evidence, present the markings of a man who is in control of an extensive drug operation. Wilder's grand jury testimony was also supported by Gant's testimony about Campbell's trafficking activities. Campbell had numerous opportunities to contest and challenge the credibility of all the evidence arrayed against him, and he did so vigorously. The district court did not abuse its discretion in considering Wilder's grand jury testimony as further evidence that Campbell was trafficking in large quantities of cocaine.

## IV. CONCLUSION

We AFFIRM Campbell's conviction and sentence.