UNITED STATES of America,
Plaintiff–Appellee,

v.

Alfredo SANTOS, Defendant–Appellant.

No. 93–2446.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1994.

Decided March 25, 1994.

Rehearing Denied April 26, 1994.

William J. Lipscomb (argued), Office of the U.S. Atty., Milwaukee, WI, for U.S.

Gerald P. Boyle (argued), Wendy A. Patrickus, Peter Kovac, Milwaukee, WI, for Alfredo Santos.

Before ESCHBACH, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Alfredo Santos was convicted by a jury of one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i)–(ii), 371, and 2; and two counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, and 1956(a)(3)(A). Santos asserts that the evidence introduced at trial was insufficient as a matter of law to support his convictions, and that the district court erroneously denied his motion for a new trial under Fed. R.Crim.P. 33. We affirm.

## I. Facts

Santos owned and operated Santos International Travel ("Santos Travel"), a travel agency in Milwaukee, Wisconsin, from 1981 to 1992. Santos also owned a Western Union money transfer franchise, which he operated as an agent of Western Union, Inc. Western Union distributed a document entitled "Bank Secrecy Act Compliance Manual" to each of its agents. Santos received a copy of this manual in 1989 and in 1991. In accordance with federal law, the manual required the filing of a Currency Transaction Report ("CTR") (also called an IRS Form 4789) for all money transfer transactions exceeding $10,000, including multiple currency transactions on the same day by, or on behalf of, the same person.[1] The manual also required the filing of a CTR when "the sending or receiving Agent suspects that a given transaction is part of a scheme to avoid filing a Form 4789 or is otherwise part of some illegal activity...."

Santos was charged in a superseding indictment with conspiracy to possess cocaine and marijuana with intent to distribute, 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2; two counts of laundering of monetary instruments, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, and 1956(a)(3)(A); possession of cocaine with intent to distribute, 21 U.S.C.

---

1. Under Western Union policy, each agent was required to send the information necessary to complete the CTR to designated Western Union employees in Bridgeton, Missouri, prior to completing the financial transaction. The designated employees then would file the CTR with the Secretary of the Treasury of the United States.

§ 841(a)(1) and 18 U.S.C. § 2; and conspiracy to commit money laundering, 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i)–(ii), 371, and 2. Santos was tried with codefendant Francisco Espino. Although Santos filed a motion for severance of defendants and counts following the original indictment, Santos did not file a motion in response to the superseding indictment.

Charles Purpero testified that he sold five to six kilograms of cocaine a month in Milwaukee from 1983 to August 1987 and used Santos Travel to wire the proceeds of his cocaine sales to his "runner" in Florida to pay for his supply. He "talked freely" with Santos about his cocaine transactions in 1985 and in 1986. Santos requested cocaine and marijuana from Purpero on several occasions. Santos permitted him to send money under five or six different names, and Santos explained that he had to send "under $10,000; otherwise, it would send up a red flag. And he said you send it under so many different names and break it down and they will never know." Purpero identified eight transactions in 1987 in which he sent money through Santos Travel under the name "Al Yanke."

Purpero also testified that, on March 25, 1992, at the instruction of agents of the Drug Enforcement Administration ("DEA"), he met Santos at Santos Travel. This meeting was recorded through a recording device worn by Purpero. A transcript of the conversation was introduced into evidence at trial, and the recording was played to the jury. During this meeting, Purpero told Santos that he had sent his "runner" to Florida to purchase ten kilograms of cocaine, and that he needed to wire $11,000 more to the "runner" as a result of the price being "jacked up" by the supplier. Santos stated, "[i]f it is ten, then you have to do the form." Santos permitted Purpero to send the $8,000 under the name "Al Yanke" to "Antonio Carbone," a name given Purpero by a DEA agent. DEA agent Jeffrey Boobar testified that the $8,000 was subsequently received by an agent of the Internal Revenue Service ("IRS") in Florida.

Senovio Rodriguez testified that he and Genaro Rodriguez, a cousin with whom he was involved in cocaine trafficking, sent money to Mexico through Santos Travel in 1991. Santos told Genaro not to send more than $5,000 to Mexico because "the government was watching," and allowed Genaro to send money under several different names. In the summer of 1991, Santos delivered approximately $40,000 in cash to Genaro for the purchase of cocaine. Senovio also observed Genaro deliver a package to Santos which he believed to contain two to three kilograms of cocaine. In late 1991, Senovio delivered one-half kilogram of cocaine to Santos on two occasions, and delivered one kilogram of cocaine to Santos once.

Rosa Ibanez testified that she and her common-law husband sold cocaine in Milwaukee in 1991, and that her husband used Santos Travel to send proceeds of the cocaine sales to the source of their supply in California.

Johnny Robles testified that in the fall of 1990 he transferred a 1984 Corvette automobile to Espino for $6,000 and six pounds of marijuana. Espino told Robles four or five months later that he had placed title to the automobile in Santos' name because "[h]e couldn't show for it more or less what he paid for it or how he paid for it." Santos acknowledged at trial that he had title to the 1984 Corvette automobile.

Santos was convicted of conspiracy to commit money laundering and both counts of money laundering, and acquitted of all other charges. Following the trial, Santos filed a motion for judgment of acquittal under Fed. R.Crim.P. 29, and a motion for a new trial under Fed.R.Crim.P. 33. The district court denied both motions and sentenced Santos to three concurrent terms of 75 months' imprisonment, three concurrent terms of three years' supervised release, and a $12,500 fine.

## II. Analysis

### A. Sufficiency of the Evidence

In reviewing the sufficiency of the evidence presented at trial, this court must view the evidence in the light most favorable to the prosecution and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443

U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The verdict of a jury must be sustained if there was substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). "In conducting this review, '[w]e will not reweigh the evidence or judge the credibility of witnesses,'" which is the function of the jury, not an appellate court. *United States v. Campbell*, 985 F.2d 341, 344 (7th Cir.1993) (quoting *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir.1992)). Santos thus has a "heavy burden" in requesting that his conviction be overturned because it was supported by insufficient evidence. *Id.*

### 1. Conspiracy to Commit Money Laundering Conviction

A conspiracy is a confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act. To prove that a defendant was a member of a conspiracy, the Government must demonstrate a participatory link between the conspiracy and the defendant. To establish that participatory link, the Government must offer sufficient evidence to demonstrate that the defendant knew of the conspiracy and that he intended to join and associate himself with its criminal design and purpose. When reviewing conspiracy convictions, we must be certain that the Government presented substantial evidence that the defendant was a conspirator. The evidence need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt.

*Campbell,* 985 F.2d at 344–45 (citations omitted). The grand jury charged that the conspiracy's object was to conduct financial transactions involving the proceeds of cocaine trafficking with knowledge that the proceeds were from an unlawful activity. The grand jury also charged that the transactions were designed to promote cocaine trafficking, "to conceal and disguise the nature, location, source, ownership, and control" of the proceeds of the cocaine trafficking, and to avoid the transaction reporting requirements of 31 U.S.C. § 5313.[2] The overt acts consisted of knowingly and intentionally utilizing "a Western Union outlet at Santos International Travel to wire transfer drug-trafficking proceeds and funds intended to facilitate drug trafficking from drug traffickers in Milwaukee, Wisconsin to those in various source cities."

The prosecution presented overwhelming evidence to convict Santos of participation in the conspiracy. Purpero testified in detail that he sent the proceeds of his cocaine sales through Santos Travel under false names in order to purchase more cocaine, and that Santos knew of his extensive cocaine trafficking. Senovio Rodriguez testified that he and his cousin sent money to Mexico through Santos Travel in 1991. His testimony

**2.** 31 C.F.R. § 103.22(a), a regulation prescribed by the Secretary of the Treasury of the United States under 31 U.S.C. § 5313(a), requires that a domestic financial institution file a report with the Secretary whenever it is involved in a cash transaction exceeding $10,000. 31 U.S.C. § 5324(a) prohibits a person from structuring transactions for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a) and the regulations prescribed thereunder. In order to be subject to criminal prosecution for violating 31 U.S.C. § 5324(a), a person must "willfully" violate that statute. 31 U.S.C. § 5322(a).

In *Ratzlaf v. United States*, — U.S. —, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), the Supreme Court of the United States interpreted this willfulness requirement as mandating that the government prove, and the jury be instructed, that a defendant acted with knowledge that the structuring he undertook was unlawful. *Ratzlaf,* — U.S. at —, 114 S.Ct. at 663. We do not interpret *Ratzlaf* as affecting Santos' conspiracy conviction. The government introduced overwhelming evidence at trial showing that Santos knew that structuring transactions to avoid the reporting requirements of 31 U.S.C. § 5313(a) was illegal. Further, the grand jury charged that there were three objects of the conspiracy, only one of which was the avoidance of the transaction reporting requirements of 31 U.S.C. § 5313. To convict Santos of participation in the conspiracy, the jury was unanimously required to find that only one of its charged objects existed. *Campbell,* 985 F.2d at 344. If the jury unanimously found that the only charged object of the conspiracy which existed was the avoidance of the transaction reporting requirements of 31 U.S.C. § 5313, Santos would have been convicted of conspiracy to violate 18 U.S.C. § 1956(a)(1)(B)(ii). Unlike 31 U.S.C. § 5324(a)(3), 18 U.S.C. § 1956(a)(1)(B)(ii) does not contain a willfulness requirement, and therefore the holding of the Court in *Ratzlaf* is inapplicable.

showed that Santos knew that both Senovio and Genaro Rodriguez were engaged in cocaine trafficking, since Santos had purchased cocaine from each of them. Rosa Ibanez also testified that her husband used Santos Travel to send proceeds of cocaine sales to the source of their supply in California in 1991. When viewed in the light most favorable to the government, this evidence was sufficient to establish Santos' participation in the charged conspiracy.

### 2. Money Laundering Convictions

■ Santos was convicted of one count of violating 18 U.S.C. § 1956(a)(3)(A)[3] by conducting a wire transfer through Western Union of $8,000, purportedly from Al Yanke to Antonio Carbone, which was represented to be property used to conduct or facilitate narcotics trafficking. 18 U.S.C. § 1956(a)(3)(A) provides that:

(a)(3) Whoever, with the intent—

(A) to promote the carrying on of specified unlawful activity; conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

18 U.S.C. § 1956(a)(3)(A).[4] The statute defines "represented" to mean "any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section." 18 U.S.C. § 1956(a)(3)(A).

The March 25, 1992 recorded conversation between Purpero and Santos established that Santos committed this offense. The recording was corroborated by Purpero's trial testimony, and by the testimony of DEA agent Boobar that the $8,000 was subsequently received by an IRS agent in Florida. This evidence was more than sufficient to convict Santos of this count of money laundering.

Santos was also convicted of one count of violating 18 U.S.C. § 1956(a)(1)(B)(i) through the purchase and transfer of a "1984 Corvette automobile" in a financial transaction which involved $6,000 in proceeds from "some form of unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i) provides that:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i).

■ Robles testified at trial concerning his transfer of the 1984 Corvette automobile to Espino for $6,000 and six pounds of marijuana. Robles also testified that Espino later told him that title to the automobile had been placed in Santos' name because Espino could not show what or how he had paid for it. Santos acknowledged at trial that title to the 1984 Corvette automobile was placed in his name. This evidence, when viewed in the light most favorable to the government, was

---

3. Unlike the criminal enforcement provision at issue in *Ratzlaf*, 31 U.S.C. § 5322(a), the money laundering statutes which Santos was convicted of violating, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(a)(3)(A), do not contain a willfulness requirement and, instead, contain specific and detailed requirements concerning the defendant's intent and knowledge. Therefore, *Ratzlaf* is inapplicable to Santos' money laundering convictions.

4. Section 1956 defines the term "transaction" in relevant part as including ."a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition." 18 U.S.C. § 1956(c)(3). The term "financial transaction" is defined in relevant part as "a transaction which in any way or degree affects interstate or foreign commerce involving the movement of funds by wire or other means." 18 U.S.C. § 1956(c)(4). The statute also contains a detailed definition of the term "specified unlawful activity." 18 U.S.C. § 1956(c)(7).

sufficient to convict Santos of this count of money laundering.

### B. Motion for a New Trial

■ A district court's refusal to grant a motion for a new trial under Fed.R.Crim.P. 33 is reviewed for an abuse of discretion. *United States v. Morales,* 902 F.2d 604, 605 (7th Cir.), *amended, United States v. Morales,* 910 F.2d 467 (7th Cir.1990). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *Id.* If the district court believes that "there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted—he has the power to set the verdict aside" even if no erroneous rulings were made at trial. *Id.* at 606. "If the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial." *Morales,* 910 F.2d at 468.

#### 1. Joinder of Narcotics and Money Laundering Counts

■ Santos first asserts that the district court should have granted his Rule 33 motion on the ground that the joinder of narcotics and money laundering counts against him denied him a fair trial. We have recognized that money laundering and distribution of narcotics are closely connected, since "[t]he majority of reported cases involve a defendant charged with both drug dealing money laundering—i.e. they involve drug dealers laundering their drug money." *United States v. Antzoulatos,* 962 F.2d 720, 724 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 331, 121 L.Ed.2d 250 (1992). "When, as is often the case … the jury acquits a defendant of some counts of a multi-count indictment, the defendant is not entitled to a new trial on the counts of which he was convicted, on the theory that the conviction was tainted by evidence, which the jury heard, relating to the counts on which it acquitted." *United States v. Holzer,* 840 F.2d 1343, 1349 (7th Cir.), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). In *Holzer,* we

also stated that "the time to decide whether it is fair to subject a defendant to a single trial for a variety of crimes, given the risk that evidence introduced to support some of these crimes may infect the jury's consideration of the others, is before trial, when the defendant can complain of misjoinder under Fed.R.Crim.P. 8(a) or move for a severance under Rule 14." *Id.* Although Santos filed a motion for severance of defendants and counts following his original indictment, Santos did not file any pretrial motion in response to the superseding indictment. Under *Holzer,* Santos was not entitled to a new trial. The district court thus did not abuse its discretion in rejecting the Rule 33 motion on the ground of improper joinder.

#### 2. Admission of Co-Conspirator Statements

Santos also asserts that the district court should have granted his Rule 33 motion on the ground that improper hearsay evidence was admitted against him. IRS Agent Larry Kaiser testified that Espino told him that a 1988 Corvette automobile was owned by Santos, Espino was employed part-time by Santos Travel, and Espino had delivered documents to the Mexican consulate in Chicago, Illinois, on behalf of Santos Travel. Santos' attorney objected unsuccessfully to the admission of these statements at trial. The district court held that the statements were admissible against Santos as statements "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).

■ Espino's statement concerning ownership of the 1988 Corvette automobile was false because both Santos and Espino testified at trial that the 1988 Corvette automobile was owned by Espino and had merely been placed in Santos' name. This statement was not hearsay because it was not offered by the prosecution "to prove the truth of the matter asserted," Fed.R.Evid. 801(c), and thus was properly admitted against Santos.

■ Espino's remaining statements were not made "in furtherance of the conspiracy" under Rule 801(d)(2)(E). "Rule 801(d)(2)(E) is a *'limitation* on the admissibility of co-conspirators' statements that is meant to be

taken seriously.' " *United States v. Johnson,* 927 F.2d 999, 1001 (7th Cir.1991) (quoting *Garlington v. O'Leary,* 879 F.2d 277, 283 (7th Cir.1989)) (emphasis in original). "A co-conspirator statement satisfies the 'in furtherance' requirement when the statement is 'part of the information flow between conspirators intended to help each perform a role.' " *Id.* at 1002 (quoting *Garlington,* 879 F.2d at 283). For example, such statements could "recruit other conspirators, control damage to an ongoing conspiracy or keep conspirators advised about the progress of the conspiracy." *Id.*

Espino's statements to Kaiser were not part of any "normal informational flow between co-conspirators." *Id.* (citation omitted). Kaiser was not part of any conspiracy. Espino was merely commenting on his past activities and did not intend his remarks to further any objectives of his own scheme with Santos. *See id.* "Narrative declarations, mere 'idle chatter,' and superfluous casual conversations ... are not statements 'in furtherance' of a conspiracy." *United States v. Doerr,* 886 F.2d 944, 951 (7th Cir. 1989). These statements are best described as narrative discussions of past events, which do not satisfy the "in furtherance" requirement of Rule 801(d)(2)(E). *Id.* at 952.

■ This court will not reverse a conviction for an evidentiary error if the error was harmless under the standard of Fed. R.Crim.P. 52(a). *United States v. Macey,* 8 F.3d 462, 467 (7th Cir.1993); *Doerr,* 886 F.2d at 952. "An error is harmless if the other untainted incriminating evidence is overwhelming." *United States v. Manganellis,* 864 F.2d 528, 539 (7th Cir.1988). We have already described the overwhelming evidence of Santos' guilt apart from Kaiser's testimony concerning his conspiracy to commit money laundering conviction. Therefore, the district court's erroneous admission of the challenged hearsay statements was harmless.

### III. Conclusion

For the foregoing reasons, the conviction of Alfredo Santos is AFFIRMED.