**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Osmond W. BANKS, Gary Lee Renicks,**
**Gralin Hoffman, Kayla Hoffman, Willie**
**B. Fisher, Defendants–Appellants.**

Nos. 90–1977, 90–2266, 90–2292,
90–2435 and 91–2103.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1992 *
Decided May 21, 1992.

* Appeal No. 91–2103 was submitted for decision without argument. *See* Fed.R.App.P. 34(a); Cir.R. 34(f).

David E. Risley, Springfield, Ill. (argued), for U.S.

Michael B. Metnick, Diana N. Cherry (argued), Richard D. Frazier Metnick, Barewin & Wise, Springfield, Ill., for Osmond W. Banks.

James M. Drake, Springfield, Ill. (argued), for Gary Lee Renicks.

George H. Klumpner, Chicago, Ill. (argued), for Gralin Hoffman.

Steven Nardulli, Stratton, Dobbs & Nardulli, Springfield, Ill. (argued), for Kayla Hoffman.

Howard W. Feldman, Feldman & Wasser, Springfield, Ill., for Willie B. Fisher.

Before BAUER, Chief Judge, FLAUM, and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

A grand jury indicted the five appellants in this case for conspiring to deal cocaine and for substantive offenses committed as part of the conspiracy. Willie B. Fisher, Kayla Hoffman, and Gralin Hoffman pleaded guilty to the substantive counts of the indictment in exchange for the dismissal of the conspiracy counts, while Osmond Banks and Gary Renicks demanded a jury trial. The jury convicted Banks and Renicks of conspiracy to distribute cocaine, 21 U.S.C. § 846, distribution of cocaine, 21 U.S.C. § 841(a)(1), and carrying a firearm during a drug offense, 18 U.S.C. § 924(c). The court sentenced Banks to 262 months imprisonment, Renicks to 150 months imprisonment, Gralin and Kayla Hoffman each to 48 months imprisonment, and Fisher to 240 months imprisonment.

I

Gralin Hoffman began dealing drugs for Osmond Banks shortly after he and his wife Kayla moved into the apartment two floors above Banks's apartment in Springfield, Illinois. Hoffman would obtain eighth-ounce bags of cocaine from Banks, break them into smaller bags, then sell them to customers who Banks sent his way; Banks and Hoffman split the profits. Hoffman's responsibility rose rapidly. In time, Banks showed him where to pick up the supplies of cocaine. He began selling cocaine in larger amounts and on a daily basis. He also served as the middleman for large one-ounce deals between Banks and Gary Renicks, and served as Renicks's backup source if Renicks could not get cocaine from Banks. Additionally, at Banks's direction, Hoffman taught Lynard Crawford (who was named in the original indictment, pleaded guilty, and is not party to this appeal) the ins and outs of Banks's operation.

Brian Latham, the case agent, began investigating drug dealing in Springfield by buying one gram of cocaine from Hoffman at Hoffman's apartment on October 24th and again on the 25th, 1988. Latham, accompanied by Pierre Dupree, who was a confidential informant and Osmond Banks's cousin, returned to Hoffman's apartment to make another buy on the 26th. Soon after they got to Hoffman's apartment, Banks arrived. After Latham told Hoffman and Banks that he wanted to buy a sixteenth-ounce of cocaine, Banks started to weigh the drugs. Several customers, though, interrupted Banks when they came to the apartment looking for drugs. On each occasion, while Hoffman opened the door, Banks brandished a .357 magnum revolver loaded with hollow point bullets. When the interruptions stopped, Banks and Hoffman completed the sale to Latham.

Several weeks later, Latham, who now wore a recorder, and Dupree returned to Hoffman's apartment to buy an eighth-ounce of cocaine. Banks was at the apartment again. This time, after Hoffman and Latham finished the deal, Banks asked Dupree if he wanted to open a drug house for him, as Gary Renicks had done just that day. Dupree agreed to join the business.

About two weeks later, Latham, again wearing a recorder, sought to buy an entire ounce of cocaine from Banks. This time Latham and Dupree went to Banks's apartment. Banks answered the door armed with a blue steel .357 magnum Python revolver with a vented rib barrel. Latham stepped inside the doorjamb of Banks's apartment and saw on a table a solid white block of powdery substance that he guessed to be about 8″ × 10″ × 3″—the size, his experience told him, of a kilogram of cocaine. Banks did not want Latham and Dupree in his apartment so he told them to wait in the hallway while he contacted someone who could transact the cocaine deal. (Though Banks orchestrated

many drug deals, it seems that he had a policy of never actually handing the drugs to the buyers himself.) Lynard Crawford soon arrived to make the deal. After Crawford completed the sale to Latham, Latham asked if he could talk to Banks about the price of future deals. Banks stepped into the hallway, listened, told Latham maybe but that it was up to Hoffman, and told him he would do his best.

Latham continued his investigation by buying a half-gram of cocaine for $50 from Renicks. Latham testified to two significant results of this transaction. First, Renicks executed the deal while armed with a .32 caliber short-barrelled, nickel-plated revolver. Second, when Latham sought Renicks's assurance that the cocaine was good, Renicks told him that, not only was it good because it came from Osmond Banks, but also the amount was accurate because Banks would not appreciate it if he cheated people.

Latham made his final drug buy at Hoffman's apartment on December 6, 1988. Banks, Gralin Hoffman, and Kayla Hoffman were all there that day. Latham said he wanted an ounce; Banks got on the phone and called in an order. True to form, Banks told Kayla to count Latham's money as he didn't do transactions. While waiting for the cocaine, Banks brushed against Latham as he walked by him. Banks felt Latham's recorder. He immediately tried to pat Latham down, but Latham cut him off by showing Banks the gun he had tucked in the waistband of his pants. The battle of bravado now joined, Banks lifted his sweatshirt, revealing the wooden grip of a .32 caliber Charter Arms revolver that Banks called his "people gun." Banks remained agitated but finally acquiesced and insisted that Latham stay to complete the deal. When the drugs arrived they completed the deal.

## II

Banks and Renicks press claims of error concerning their trial; all appellants save Fisher press claims concerning their sentence. Fisher's counsel submitted a motion to withdraw, along with a brief supporting his belief that an appeal would be frivolous. We first address the claims concerning the trial, then the claims regarding sentencing.

## A

Gary Renicks states that the government did not prove his involvement in the conspiracy beyond a reasonable doubt. He claims that the only evidence of his involvement was the showing that he bought cocaine from Hoffman and Crawford, and that "a mere buyer-seller relationship, without more, is insufficient to support a drug conspiracy conviction." *United States v. Douglas*, 874 F.2d 1145, 1151 (7th Cir.1989). Had the government introduced evidence of Hoffman's and Crawford's transactions without more, then Renicks might have a point. Latham, however, testified that Banks told him that Renicks was running a drug house for him. This testimony tied Renicks directly to the conspiracy. Renicks's only alternative, therefore, is to argue that Latham's testimony about what Banks told him was inadmissible hearsay.

■ Before allowing Latham to testify about what Banks told him, the court had to decide whether to admit the testimony under Federal Rule of Evidence 801(d)(2)(E), which excludes from the definition of hearsay "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." In arguing admissibility, the government proffered the affidavit filed in support of the original complaint. The judge considered the affidavit in conjunction with the testimony he heard up to that point in the trial and concluded that the existence of a conspiracy was more likely than not. Because we see no clear error in this decision, we affirm the court's ruling.

■ The court's initial finding of a conspiracy for evidentiary purposes does not end its duty to monitor whether a conspiracy truly exists, however. If at the end of its case the government has not met its burden of proving a conspiracy, the court may declare a mistrial. Renicks urges that the court should have done so in this case

because of a government error relating to the taped conversations.

The government made transcripts of all the conversations that Latham recorded during the course of his investigation. All but one, that is. The one recording that the government did not transcribe was the tape of Latham's conversation with Banks about Renicks's plan to run a drug house for him. At a pretrial conference the government told the defense attorneys that all tapes were available. But, because the tape in question was not transcribed, the attorneys apparently overlooked it. The government admitted the mistake, and the court moved with celerity to remedy the problem and to stave off any potential complications. The tape was transcribed overnight, the defense attorney reviewed the transcript, and, although the prosecution did not use the transcript, Renicks's attorney used it to cross-examine Latham. The cross-examination focussed on the conflict between Latham's testimony about Banks's statements and the lack of corroboration in the transcript, which was "inaudible" in several parts. Renicks then argued to the jury that the transcript discredited Latham's testimony about Renicks's involvement in the conspiracy.

Renicks contends that the government's error, coupled with the holes the transcript poked in Latham's testimony, required the court to declare a mistrial. Though the failure to transcribe the tapes was regrettable, the court corrected the problem. That done, the issue became one of weighing the evidence. Renicks made his case by using the transcript to cross-examine Latham and arguing to the jury the points made during that cross-examination. In the end, the trial proceeded as though Renicks had the transcript all along; the mistake was corrected.

Nor did the use of the transcript to cross-examine Latham affect the court's initial ruling on the admissibility of the coconspirator statements. The court heard an abundance of evidence about Renicks's involvement in the conspiracy.

Banks also asks for a new trial claiming that the government's closing argument contained reversible error. Specifically, Banks points to the arguments that: (1) Latham did not record his drug deal with Renicks because Latham feared for his safety and did not want to increase the risk of harm to himself; (2) Banks's attorney interviewed Pierre Dupree, who did not testify, but decided not to call him to trial; and (3) Gralin Hoffman's understanding of his plea agreement was not the law in the case.

■ We test the government's closing argument by asking first, if it contained improper remarks, and, second, if it did, whether the improper remarks, in light of the entire record, deprived Banks of a fair trial. *United States v. Jewel*, 947 F.2d 224, 229 (7th Cir.1991). As part of the second step "we consider whether and to what extent the improper remark was provoked by the defense counsel's argument—the so-called 'invited response' doctrine." *United States v. Swiatek*, 819 F.2d 721, 730 (7th Cir.1987) (citation omitted).

■ The government's comments generally were in response to the arguments made by the defense attorneys. First, the government's point about Latham's fear of recording his deal with Renicks was a response to Renicks's attorney's argument that the jury should discount Latham's testimony because he did not tape the drug deal with Renicks. The government simply pointed out the danger of wearing a tape recorder. Second, the government's mention of Banks's failure to call Dupree was an invited response to Banks's argument, which questioned Dupree's absence from trial by pointing to the government's failure to call Dupree to testify. The government responded that it did not have exclusive access to Dupree, *see United States v. Romo*, 914 F.2d 889, 893–94 (7th Cir.1990); therefore, Banks could have called Dupree if he had wished. Third, Banks argued that Hoffman made a bad witness because he testified in exchange for a deal whereby he would be sentenced for dealing one gram of cocaine. Banks's argument provoked the government's response that, in fact, under the law Hoffman could be sentenced for more. What is clear, above all,

is that the government's closing argument, in light of the entire record, did not deprive Banks of a fair trial. Beyond Hoffman's testimony, the jury heard testimony of Banks's involvement in the conspiracy from other codefendants, from Latham, and from Banks's own recorded statements taped during the investigation. The government surfeited the jury with evidence of Banks's guilt, satisfying the second step of our analysis.

■ The final matter concerning the trial is Banks's claim that the court violated the Constitution by refusing to instruct the jury to make a finding as to the weight of cocaine he was guilty of dealing. This argument does not fall on a fallow field. We recently reasserted the well-rooted rule that in prosecutions under 21 U.S.C. §§ 841(a)(1) and 846, "the quantity of drugs involved ... does not constitute a substantive element of the drug offense." *United States v. Trujillo*, 959 F.2d 1377, 1381 (7th Cir.1992). Banks was prosecuted for violating sections 841(a)(1) and 846; the Constitution did not entitle him to the instruction he sought.

### B

At the sentencing hearing the court determined that the conspirators dealt 9.537 kilograms (kg) of cocaine. This weight served as the starting point for the court to calculate the base offense level for all the defendants. The court then adjusted the sentences according to various factors, such as each person's role in the offense, and whether each cooperated with the government. Banks, joined by all the appellants except Fisher, offers four arguments urging that constitutional error marred the court's finding of 9.537 kgs as the proper weight to use for sentencing. They claim that the court erred by its calculations because: (1) there was no jury finding as to weight; (2) the indictment charged them only with dealing drugs in excess of 500 grams, thus depriving them of notice that the greater weight would be used; (3) the presentence report was based on unreliable testimony; and (4) the court

included in the amount one kilogram for which the jury acquitted Banks of dealing.

■ All these objections go to the appellants' claim that 9.537 kgs should not have been the amount of drugs attributed to the conspiracy. Courts weigh many factors when determining the proper amount of drugs to use for sentencing convicted conspirators. For example, the court may consider all relevant conduct that was part of the charged offense, regardless of whether that conduct was charged in the indictment. United States Sentencing Commission, *Guidelines Manual*, § 1B1.3 (Nov. 1991); *United States v. Nunez*, 958 F.2d 196, 198 (7th Cir.1992). This conduct also may include conduct for which a defendant was charged and acquitted. *United States v. Fonner*, 920 F.2d 1330, 1333 (7th Cir.1990). The government must prove by a preponderance of evidence the occurrence of the conduct that it asks the court to consider as relevant. *McMillan v. Pennsylvania*, 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986). The court makes credibility judgments concerning the facts of the government's case and the information provided in the presentence report. We review the court's factfindings deferentially, reversing only for clear error. *United States v. Schuster*, 948 F.2d 313, 315 (7th Cir.1991).

■ The court in this case conducted a thorough sentencing hearing. It arrived at 9.537 kgs by judging the credibility of the witnesses and weighing the evidence from the trial. From its knowledge of the case, the court also assessed the information in the presentence report. It went through the report, paragraph by paragraph, with attorneys from both sides, accepting some findings and rejecting others. The court found the report reliable as to amount because it contained information based on interviews with many of the defendants involved in the case. It also found Banks responsible by a preponderance of the evidence for the one kilogram of cocaine for which the jury acquitted him. Given the evidence at trial and the information in the presentence report, we cannot say that the

court clearly erred in any of its findings as to weight.

As a final matter concerning weight, Gary Renicks and Kayla Hoffman, citing section 2D1.4 of the Guidelines, assert that the court erred by not departing downward when sentencing them because they could not reasonably have foreseen that the conspiracy in which they were involved was so extensive. This poses the same argument made above, but by citing to a different Guidelines' section. *See* U.S.S.G. § 2D1.4, comment. (n. 1), which, if, as in this case, the defendant has been convicted of conspiracy, refers the reader to U.S.S.G. § 1B1.3, comment. (n. 1). The argument fails under section 2D1.4 for the same reasons it failed under section 1B1.3.

 The principles of sentencing based on offense conduct and deference to the court's factfinding also defeat Banks's claims, which he alone presses, that he did not have a leadership role in the conspiracy and that he did not obstruct justice by denying his involvement in the conspiracy. The court found that Banks was the sole supplier of cocaine to the other members of the conspiracy. It also found that Banks recruited Crawford and Fisher into the conspiracy. The record supports these findings, which in turn support the court's ruling that Banks led the conspiracy. U.S.S.G. § 3B1.1(a), comment. (n. 3); *United States v. Thompson*, 944 F.2d 1331, 1348–49 (7th Cir.1991). The court also found that when Banks approached the government with an offer of cooperation before trial, he lied about his involvement and activities in the conspiracy. The court found that these lies misled the government in its attempt to prosecute whomever supplied cocaine to Banks. Based on these findings, the court adjusted upward Banks's sentence for obstruction of justice. U.S.S.G. § 3C1.1. These findings were not clearly erroneous. *See* U.S.S.G. § 3C1.1, comment. (n.3(g)).

 Banks's final complaint about his sentencing is that the court included in its computation of his criminal history level a prior misdemeanor conviction that arose from an unconstitutional guilty plea. Under the Guidelines "[c]onvictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." U.S.S.G. § 4A1.2, comment. (n. 6); *United States v. Brown*, 899 F.2d 677, 679 (7th Cir.1990). Banks bears the burden of proving that the prior conviction was constitutionally invalid. *Id.* Banks testified at sentencing that he was sentenced to probation for prior misdemeanor charges listed in the presentence report. He claimed, however, that he was not represented by counsel on those charges, that no one told him of his constitutional rights regarding those charges, that he did not appear before a judge, and that he did not enter a formal guilty plea. The court found that this testimony did not overcome the evidence of the prior conviction found in the state court records. Those records showed that Banks was represented by counsel, that he signed a waiver of his right to trial by jury, *see United States v. Unger*, 915 F.2d 759, 762 (1st Cir.1990), and that he entered a formal guilty plea. Banks's self-serving testimony, *see United States v. Boyer*, 931 F.2d 1201, 1205 (7th Cir.1991), does not overcome the court's finding that all was in "normal customary proper order." Sentencing Transcript at 160; *see United States v. Gallman*, 907 F.2d 639, 644 (7th Cir.1990).

Gralin Hoffman claims that the government failed to notify the court that he received use immunity in return for his testimony. He also claims that his trial counsel's failure to object to this omission rendered counsel's assistance constitutionally ineffective. The court, however, knew full well that the government gave Hoffman use immunity. Trial Transcript at 288–89. Hoffman's arguments in this regard are frivolous.

Fisher's counsel raises as possible grounds for appeal the court's erroneous failure to lower Fisher's base offense level because he was a minimal participant, and its erroneous increase of his base offense level for obstruction of justice. These and the other issues on appeal are frivolous.

We thus GRANT Fisher's counsel his motion to withdraw.

We AFFIRM the convictions and sentences of Banks, Renicks, Gralin Hoffman, Kayla Hoffman, and Fisher.