30 F.3d 132
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James H. HUTCHINS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwight JONES, a/k/a Shakey, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joanie M. RADFORD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jamil RASHEED, Defendant-Appellant.
 Nos. 93-5616, 93-5620, 93-5618, 93-5619.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 13, 1994.
Decided: July 25, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CR-92-162-R)
 Edward Eric Scher, Mays & Valentine, Richmond, Virginia; Craig S. Cooley, Richmond, Virginia, for Appellants.
 Karen Marie Quesnel, Tax Division, United States Department of Justice, Washington, D.C., for Appellee.
 Janipher W. Robinson, Richmond, Virginia, for Appellant Radford;
 Ronald E. Schwartz, Cincinnati, Ohio, for Appellant Jones.
 Loretta C. Argrett, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Helen F. Fahey, United States Attorney, Tax Division, United States Department of Justice, Washington, D.C., for Appellee.
 Before RUSSELL and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 E.D.Va.
 AFFIRMED.
 OPINION
 PER CURIAM:
 
 
 1
 In this consolidated appeal, James Hutchins, Dwight Jones, Joanie Radford, and Jamil Rasheed challenge their convictions for narcotics offenses. Each defendant contends that the evidence was insufficient to support one or more of his or her convictions. Hutchins and Jones challenge the sufficiency of the government's evidence to establish conspiracy to distribute cocaine. Hutchins also challenges the sufficiency of the evidence to support his convictions for drug distribution, violations of the Travel Act, money laundering, investing illicit drug profits in an enterprise affecting interstate commerce, and conspiracy to defraud the United States. Rasheed challenges the sufficiency of the evidence to support his conviction of the latter offense. Radford contends the evidence was insufficient to establish her use of a communication facility to facilitate the distribution of cocaine. In addition to the sufficiency of the evidence challenges, Jones alleges prosecutorial misconduct during closing argument, and Hutchins and Jones contend that the district court erred in calculating their sentences. Finding no merit to any of the defendants' contentions, we affirm the district court's judgment on each issue.
 
 
 2
 * At trial, it was established that during the period from 1985 to 1992, James Hutchins directed a narcotics operation in the Richmond, Virginia, area. He supplied cocaine to both dealers and ultimate users, and he also ran an illegal bookmaking operation. Hutchins' girlfriend, Joanie Radford, assisted him in his cocaine sales. She packaged cocaine and distributed it from her house to persons sent there by Hutchins. In July 1988, Hutchins leased an abandoned convenience store and renovated the building. He eventually opened a restaurant, Big Daddy's Seafood and Lounge, from which he arranged drug transactions. In New Jersey, Dwight Jones acted as a middleman for Hutchins by dealing drugs for him there.
 
 
 3
 It was also established that Hutchins and his wife, Annie, failed to report income on their 1989 and 1990 federal income tax returns.[1] Their cash expenditures exceeded the income reported on their returns by $132,575 in 1989 and $561,259 in 1990. As a result, Hutchins and his wife owed additional income tax in the amounts of $34,185 for 1989 and $149,998 for 1990. The excess cash expenditures represented unreported income from Hutchins' bookmaking operation, his personal gambling activities, and his drug sales. The government produced circumstantial evidence that during 1988-90, Hutchins and Radford engaged in both illegal structuring and money laundering activities to conceal the income from these illegal sources. It also showed that Hutchins and his son Jamil Rasheed caused Rasheed's business, J & H Furniture, to issue numerous checks to Hutchins which would either be drawn on the company's payroll account and redeposited in its operating account, or vice-versa. The checks frequently contained two endorsements: one of Rasheed and one purportedly of Hutchins.
 
 
 4
 On December 2, 1992, a grand jury returned a 29-count indictment against Hutchins, Jones, Radford, Rasheed, and others, charging the various defendants with conspiracy to possess with intent to distribute and conspiracy to distribute in excess of 5 kilograms of cocaine (Count 1); distribution of a controlled substance (Counts 2-13); illegal use of a communication facility (Count 14); travelling or causing travel in interstate commerce to facilitate unlawful activity (Counts 15-20); investing illicit drug profits in an enterprise affecting interstate commerce (Count 21); structuring financial transactions to evade reporting requirements (Counts 22, 26); conspiracy to commit money laundering (Count 23); laundering of monetary instruments (Counts 24, 25); conspiracy to defraud the United States by impairing, impeding, obstructing or defeating the lawful functions of the Internal Revenue Service (Count 27); and attempted income tax evasion for taxable years 1989 and 1990 (Counts 28, 29).
 
 
 5
 On April 22, 1993, after a jury trial, Hutchins was convicted on twenty-four counts, including conspiracy to distribute cocaine, distribution of a controlled substance, illegal use of a communication facility, travelling or causing travel in interstate commerce to facilitate unlawful activity, investing illicit drug profits in an enterprise affecting interstate commerce, structuring financial transactions to evade reporting requirements, conspiracy to commit money laundering, money laundering, conspiracy to defraud the United States, and attempted income tax evasion. Jones was convicted of one count of conspiracy to distribute cocaine. Radford was convicted on nine counts, including conspiracy to distribute cocaine, distribution of a controlled substance, illegal use of a communication facility, structuring financial transactions to evade reporting requirements, conspiracy to commit money laundering, and money laundering. Rasheed was convicted of one count of conspiracy to defraud the United States. The district court sentenced Hutchins to 327 months of imprisonment, Jones to 135 months of imprisonment, Radford to 168 months of imprisonment, and Rasheed to 6 months of imprisonment. Here, the appellants challenge the sufficiency of the evidence to support most of their convictions. Hutchins and Jones also contend that the district court erred in calculating their sentences, and Jones further contends that remarks made by the prosecutor during closing argument constituted reversible error.
 
 
 6
 We review the challenges regarding the sufficiency of the evidence under the standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979), and inquire whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt...." The evidence is construed "in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). We uphold the factual findings of the district court supporting the appellants' sentences unless they are clearly erroneous, United States v. Riley, 991 F.2d 120, 126 (4th Cir.1993) (role in the offense), cert. denied, 114 S.Ct. 392 (1993); United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990) (quantity of drugs involved), and we give due deference to the district court's application of the United States Sentencing Guidelines to the facts. 18 U.S.C. Sec. 3742(e). Finally, since Jones did not object to the prosecutor's remarks at trial, we review them under the plain error standard. United States v. Mitchell, 1 F.3d 235, 239 (4th Cir.1993).
 
 II
 Sufficiency of the Evidence
 
 7
 A. Drug conspiracy and substantive drug distribution convictions
 
 
 8
 Hutchins and Jones challenge the sufficiency of the evidence to establish their participation in the conspiracy to possess with intent to distribute cocaine and to distribute cocaine; that is, they challenge that they had knowledge of the conspiracy and voluntarily became part of it. See United States v. Mabry, 953 F.2d 127, 130 (4th Cir.1991), cert. denied, 112 S.Ct. 1951 (1992).
 
 
 9
 In order to show that a defendant was a member of a conspiracy, the government need not prove that the defendant had complete knowledge of all aspects of the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992), cert. denied, 114 S.Ct. 112 (1993).
 
 
 10
 [O]ne may become a member of the conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy ... even though he played only a minor part.
 
 
 11
 United States v. Roberts, 881 F.2d 95, 101 (4th Cir.1989). These elements may be shown by circumstantial evidence. United States v. Baker, 985 F.2d 1248, 1255 (4th Cir.1993), cert. denied, 114 S.Ct. 682 (1994). Applying the above principles, we are persuaded that the evidence was sufficient to support the defendants' convictions.
 
 
 12
 (i) Hutchins
 
 
 13
 William Mosley, who was incarcerated for possession and distribution of cocaine at the time of trial, testified that he had been involved in selling drugs for Hutchins for eight or nine years. He testified about numerous drug transactions he had completed for which Hutchins had supplied the drugs and set the price. Mosley testified specifically about deals he had completed with drug dealer Danny Flax that had involved at least fifteen kilograms of cocaine supplied by Hutchins. Testimony concerning purchases of cocaine from Hutchins was also presented by witnesses Osborne Davis, Lonzo Harris, Michael Patterson, James Houston, and others.
 
 
 14
 Hutchins argues that these witnesses were associates and convicted felons who lacked credibility. However, even the uncorroborated testimony of an associate may be sufficient to sustain a conviction, United States v. Burns, 990 F.2d 1426, 1439 (4th Cir.), cert. denied, 113 S.Ct. 2949 (1993), and it is the role of the jury to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir.1984), cert. denied sub nom. O'Hare v. United States, 469 U.S. 1217 (1985). From the evidence presented, the jury could have readily inferred an agreement to distribute cocaine, Hutchins' knowledge of the agreement, and Hutchins' voluntary participation in the conspiracy. See United States v. Chambers, 985 F.2d 1263, 1270 (4th Cir.), cert. denied, 114 S.Ct. 107 (1993). Likewise, the evidence was sufficient to support a jury finding that Hutchins distributed, caused to be distributed, and aided and abetted in the distribution of cocaine to Danny Flax, Osborne Davis, James Houston, and others, as alleged in the substantive drug distribution counts of the indictment.
 
 
 15
 (ii) Jones
 
 
 16
 It is also clear that the evidence was sufficient to support the jury's finding that Jones voluntarily participated in the conspiracy. Mosley testified that Jones was the "in-between" man in New Jersey and that Jones took money from Hutchins and made deals for drugs in New Jersey. Mosley also testified that on two occasions, Hutchins asked him to deliver money for drugs to Jones, and that Jones was involved in the transportation of drugs for Hutchins. Jones himself admitted that he received $21,000 and $25,000 from Hutchins on two different occasions.
 
 B. Travel Act convictions
 
 17
 Hutchins claims the evidence was insufficient to sustain his conviction of violating the Travel Act, 18 U.S.C. Sec. 1952, because it did not establish that the purpose of the travel by one of his associates was to distribute cocaine. We disagree because, in our view, the evidence established the elements of a Travel Act violation beyond a reasonable doubt.[2] Mosley gave detailed testimony concerning two trips he made to New York in 1990, from which the jury could reasonably infer that the interstate transportation of cocaine was for Hutchins. In addition, Harold Evans testified concerning an interstate trip he made, on behalf of Jones and Hutchins, during which he was stopped by the Virginia state police, who discovered a hidden compartment in the truck, which contained several half-full bottles of lactose, a common cutting agent for cocaine.
 
 C. Financial transactions crimes
 
 18
 Hutchins contends, in relation to his money laundering convictions on Counts 23, 24, and 25, that the government did not establish that the funds involved in the transactions came from an illegal source. He also argues that the government did not demonstrate he had the requisite intent or purpose to support a conviction for structuring transactions to avoid reporting requirements, as alleged in Counts 22 and 26. Again, we disagree.
 
 
 19
 The money laundering statute, 18 U.S.C. Sec. 1956, does not require that the government trace the origin of all funds deposited into a bank account; the statute "allow[s] for convictions where the funds involved in the transaction are derived only in part from 'specified unlawful activities....' " United States v. Jackson, 935 F.2d 832, 840 (7th Cir.1991). "Evidence of a differential between legitimate income and cash outflow is sufficient for a money-laundering conviction, even when the defendant claims income from additional sources." United States v. Webster, 960 F.2d 1301, 1308 (5th Cir.), cert. denied sub nom. Nelson v. United States, 113 S.Ct. 355 (1992).
 
 
 20
 The evidence established that Hutchins ran a drug distribution ring and an illicit gambling operation, and he had access to large amounts of cash. Osborne Davis testified that Hutchins asked him to sign a contrived note because he needed a way of showing where he got his income, in case the Internal Revenue Service wanted to check his records. Davis also testified that Hutchins told him he spent $100,000 renovating Big Daddy's restaurant. The government's evidence established that Hutchins did not have sufficient legitimate income to account for his cash expenditures for the years 1988-90, the prosecution period. This and other evidence clearly support Hutchins' money laundering convictions in Counts 23 and 25, and his conviction for investment of illegal drug profits in Count 21.
 
 
 21
 Counts 22 and 24 relate to the structuring of transactions and the laundering of funds in relation to the purchase, in Radford's name, of a house in Highland Springs. From the evidence the government presented regarding the absence of sources of legitimate income for Hutchins and Radford, and the evidence of the way in which the purchase was structured, the jury could reasonably have found that at least part of the cash used for the purchase was proceeds of a specified unlawful activity. With regard to the structuring transactions conviction in Count 22, the government presented detailed evidence of Hutchins' and Radford's cash transactions involving amounts less than $10,000, on the same day and at two different banks, when they were arranging to pay the settlement costs for Radford's house. The jury could reasonably infer that the only purpose for conducting the transaction in such a manner was to prevent the filing of a Currency Transaction Report, which would have been required if they had used cash to buy a single cashier's check for $11,089.62, the amount due at settlement. Similar evidence was presented to support Hutchins' structuring conviction in Count 26.
 
 
 22
 D. Use of a communication facility to facilitate distribution of cocaine
 
 
 23
 Radford contends that the evidence was insufficient to support her conviction for illegally using a telephone to facilitate the commission of a felony (the distribution of cocaine), in violation of 21 U.S.C. Sec. 843(b).
 
 Section 843(b) provides:
 
 24
 It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter.... For purposes of this subsection, the term "communication facility" ... includes telephone....
 
 
 25
 Again, we hold there was sufficient evidence. On November 13, 1991, the government intercepted and taped two telephone conversations between Hutchins and Radford, which involved a delivery to Radford. Based upon the contents of these conversations, as well as the testimonies of Amanda Cottman and William Mosley, the jury could reasonably infer that Hutchins was arranging for the delivery of an "eight ball" of cocaine to Radford.
 
 E. Conspiracy to defraud the United States
 
 26
 Hutchins and Rasheed contend that there was insufficient evidence to support their convictions for conspiracy to defraud the United States, in violation of 18 U.S.C. Sec. 371.
 
 
 27
 In order to sustain a Sec. 371 violation, the government must show: 1) the existence of an agreement, 2) an overt act in furtherance of the agreement's objectives, and 3) an intent on the part of the conspirators to agree and to defraud the United States. United States v. Vogt, 910 F.2d 1184, 1202 (4th Cir.1990), cert. denied, 498 U.S. 1083 (1991) (quoting United States v. Shoup, 608 F.2d 950, 956 (3d Cir.1979)). "The offense comprehends 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.' " Id. (quoting Shoup, 608 F.2d at 964).
 
 
 28
 The evidence at trial established that Hutchins received large amounts of income from his illegal activities and that he hid his sources of income from the Internal Revenue Service. The evidence concerning the issuance of unjustified payroll checks from Rasheed's business to Hutchins and the issuance of W-2 and 1099 forms also supports the jury's conclusions. Although the appellants argue that the practice of cashing and redepositing checks is not in itself illegal, it is well settled that the acts used to accomplish the objectives of a conspiracy need not themselves be illegal. Braverman v. United States, 317 U.S. 49, 53 (1942).
 
 III
 Sentencing Determinations
 
 29
 Hutchins and Jones contend that the district court erred in computing the amount of cocaine attributable to the conspiracy for purposes of their sentencing.[3] At Hutchins' sentencing hearing, the district court made specific findings as to the amount of drugs attributable to the conspiracy. We agree with the government that the district court's determination of the drug quantity was supported by a preponderance of the evidence, United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir.1992), cert. denied, 113 S.Ct. 1352 (1993), and was not clearly erroneous. The court first included amounts of cocaine, totalling 27 kilograms, that were supported by Mosley's testimony. It then added the five kilograms that Michael Patterson testified he saw when he went to pick up cocaine at Radford's house, pursuant to Hutchins' instructions. Without considering the other, smaller quantities of drugs included by the court in its calculation, these amounts total 32 kilograms, which resulted in Hutchins' base offense level of 34. U.S.S.G. Sec. 2D1.1(c)(5). The district court properly determined the amount of cocaine attributable to Hutchins and calculated his sentence accordingly.
 
 
 30
 Hutchins also argues that the district court erred by increasing his offense level four levels, pursuant to U.S.S.G.Sec. 3B1.1(a), because the evidence did not establish that he played a leadership or organizational role in the cocaine conspiracy. Section 3B1.1(a) of the Guidelines directs a district court to increase a defendant's offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." Factors a court should consider in determining whether a defendant played a leadership or organizational role include:
 
 
 31
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 32
 U.S.S.G. Sec. 3B1.1 comment n. 4.
 
 
 33
 Here, again, the district court was clearly correct in finding that the requirements of Sec. 3B1.1(a) were met. At minimum, William Mosley, Tony Patterson, Osborne Davis, Ben Jackson, Lonzo Harris, James Houston, Joanie Radford, and Dwight Jones were participants, along with Hutchins. Hutchins supplied the cocaine to those who distributed it to the ultimate users, and he set the price for the deals. Hutchins directed the other participants where to go to pick up cocaine or deliver money for it.
 
 
 34
 Next, we reject Hutchins' contention that the district court erred in placing him in criminal history category II pursuant to Sec. 4A1.1(b) of the Guidelines.[4] Hutchins claims that the district court erred in counting a 1975 sentence for possession of a lottery ticket. He cites U.S.S.G. Sec. 4A1.1 comment n. 2: In calculating a defendant's criminal history category, "[a] sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted." He, however, was convicted for possession of a lottery ticket in 1973, and sentenced on January 22, 1975, to serve twelve months in jail, all but two of which were suspended. His sentencing thus occurred within ten years of the date alleged in the indictment as the start of the conspiracy, "prior to January 1, 1985." This date is supported by Mosley's testimony that he and Hutchins began selling drugs eight or nine years prior to 1992, that is, in 1983 or 1984.
 
 
 35
 Jones contends not only that the district court erred in calculating the amount of cocaine attributable to him for purposes of his sentencing, but also that the district court failed to make specific findings with regard to that amount. However, at his sentencing hearing, Jones' counsel objected only to the probation officer's suggested base offense level of "a 34 as opposed to a 36[sic]," and stated "that is the sole objection we had." The district court adopted the findings of the presentence report[5] and granted Jones' request that a base offense level of 32 be utilized. Because Jones did not object in any other way to the amount of drugs attributed to him, and because he received the base offense level he requested, we agree with the government that he cannot now claim that he was sentenced on the basis of inaccurate information. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir.1993); United States v. Arvanitis, 902 F.2d 489, 495 n. 5 (7th Cir.1990).
 
 IV
 Prosecutor's Closing Remarks
 
 36
 Finally, Jones contends, for the first time, that the prosecutor's improper statements during closing argument denied him a fair trial.[6] The government argues, however, that even if the prosecutor's remarks were improper, they did not prejudice Jones or rise to the level of plain error. We agree.
 
 
 37
 Improper remarks made by the prosecutor during closing argument do not always mandate retrial. "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). We have previously stated that "[t]he test for reversible prosecutorial misconduct generally has two components: that '(1)the prosecutor's remarks or conduct must in fact have been improper, and (2)such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.' " United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988) (quoting United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985)).[7] Since Jones did not object to the prosecutor's remarks at trial, we review under the plain error standard, Mitchell, 1 F.3d at 239. "This Court must examine the record as a whole because the evaluation of plain error claims is not to be an extraction of isolated instances of error; the question is whether the error was 'such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice.' " Id. at 239-40 (quoting United States v. Young, 470 U.S. 1, 16 (1985)).
 
 
 38
 In our view, the comments of the prosecutor were not extensive and did not so infect the trial with unfairness that Jones was denied due process. The prosecutor did not urge the jury to convict Jones for an improper reason. Cf. Mitchell, 1 F.3d at 241-42 (improper argument ran throughout trial, and prosecutor improperly stressed that defendant's brother had been convicted in another trial for the same conspiracy). The district court appropriately instructed the jury that only legal evidence could be used to support any charge against the defendant. See United States v. Saenz, 747 F.2d 930, 943 (5th Cir.1984) (court's instruction that arguments of counsel were not evidence was sufficient to protect defendant's rights), cert. denied sub nom. Solis v. United States, 473 U.S. 906 (1985). In an earlier part of this opinion, we held the evidence sufficient to support Jones' conspiracy conviction; that is significant here. See United States v. Pupo, 841 F.2d 1235, 1240 (4th Cir.) (evidence of guilt was adequate; no reversible error in prosecutor's statements), cert. denied sub nom. Govantes v. United States, 488 U.S. 842 (1988). It is also significant that the jury found Jones not guilty on Count 20, demonstrating that the jury weighed the evidence, rather than being swayed by the prosecutor's remarks.
 
 
 39
 In view of the foregoing, the convictions and sentences of all of the defendants are affirmed.
 
 AFFIRMED
 
 
 [1]
 They were convicted on two counts of attempted income tax evasion for the years 1989 and 1990. These convictions were not appealed
 
 
 [2]
 To support a conviction under the Travel Act, the evidence must establish: 1)interstate travel, 2)intent to promote unlawful activity, i.e., a business enterprise, and 3)performance or attempted performance of an unlawful act. United States v. Gallo, 782 F.2d 1191, 1194 (4th Cir.1986), cert. denied, 490 U.S. 1070 (1989)
 
 
 [3]
 Hutchins' challenge is based solely upon his argument that the district court could not rely on the testimony of Mosley. However, just as Mosley's testimony was sufficient evidence upon which the jury could base Hutchins' convictions, Burns, 990 F.2d at 1439, it was also evidence upon which the district judge was entitled to rely in making his quantity of drugs determinations. See United States v. Banks, 964 F.2d 687, 692 (7th Cir.1992) (district court entitled to weigh evidence from trial and to judge credibility of witnesses when determining amount of drugs to use for sentencing convicted conspirators), cert. denied, 113 S.Ct. 470 (1992)
 
 
 [4]
 Section 4A1.1(b) provides that two points be added to a defendant's criminal history category for each prior sentence of imprisonment of at least 60 days not previously taken into consideration
 
 
 [5]
 For this reason, there is no merit to Jones' contention that the district court erred by not making a specific finding as to the quantity of drugs attributable to him. It is true that when the amount of drugs for which a defendant is to be held responsible is disputed, the court must make an independent resolution of the factual issue at sentencing. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir.1993). However, the required finding may be made by the district court's express adoption of the recommended findings contained in the presentence report. United States v. Morgan, 942 F.2d 243, 245 (4th Cir.1991)
 
 
 [6]
 He claims that the prosecutor improperly: 1)vouched for the credibility of government witnesses, 2)attacked the defense case by stating that the defense counsel's job was to create subterfuge, 3)appealed to the prejudices and fears of the jury by referring to the television show "Miami Vice," 4)attempted to bias the jury against Jones by stating that "people from New Jersey think people from Virginia are stupid," 5)played to the fears of the jury members by arguing that if they didn't believe the testimony of government witnesses, they were effectively allowing a criminal to walk out of the courtroom
 
 
 [7]
 When evaluating whether the defendant was prejudiced by the prosecutor's conduct, the following factors should be considered:
 "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2)whether the remarks were isolated or extensive; (3)absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4)whether the comments were deliberately placed before the jury to divert attention to extraneous matters."
 Mitchell, 1 F.3d at 241 (quoting United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983), cert. denied, 466 U.S. 972 (1984)).